UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DONALD BURLEY,

    Plaintiff,

v.

RHONDA RIDER, SCOTT CLINE,
UNKNOWN BRADLEY, and
JOANN BRIDGEFORD,

    Defendants.
_____/

Case No. 1:17-cv-88

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on defendants' motion for summary judgment based solely on failure to exhaust administrative remedies (ECF No. 16).

    **I.**    **Background**

Plaintiff's complaint named the following defendants employed at the Lakeland Correctional Facility (LCF): Registered Nurse (RN) Rhonda Rider; Grievance Coordinator Scott Cline; Counselor Bradley; and Americans with Disabilities Act (ADA) Coordinator Joanne Bridgford (listed as "Bridgeford" in the caption). Plaintiff lists the following causes of action against defendants: a claim under the Health Insurance Portability and Accountability Act of 1996 ("HIPPA")[1], Pub. L. No. 104-191, 110 Stat. 1936 (1996); conspiracy to deprive a person of a civil right; defamation and libel by a state official; violation of the ADA, 42 U.S.C. § 12101, *et seq.*;

---

[1] The Court notes that this is abbreviated as both "HIPPA" and "HIPPAA".

1

violation of the Rehabilitation Act (RA), 29 U.S.C. § 794, *et seq.*; Eighth Amendment deliberate indifference to medical needs; First Amendment denial of access to the courts; First Amendment "interference by state actors with my right to freedom of association with other persons;" and an apparent Eighth Amendment claim against "state actors for placing me in danger and failing to protect me from an unreasonable and substantial risk of harm to my person." Compl. (ECF No. 1, PageID.4).

Plaintiff alleged that defendants committed the following acts while he was incarcerated at LCF in January and February, 2014.

First, that "Rhonda Rider did enter into an unlawful agreement with Scott Cline to deprive Plaintiff Burley of a reasonable accommodation for his profound hearing loss." Compl. (ECF No. 1, PageID.6). Specifically, plaintiff alleged that these two defendants, one of whom was a registered nurse, agreed to injure him "by their unlawful actions of illegally obtaining protected health care information from Burley's files, and did this with explicit agreement to deprive plaintiff of an accommodation." *Id*.

Second, that Grievance Coordinator Cline "did cause [RN] Rider to illegally release protected medical records of Plaintiff." *Id*.

Third, that Counselor Bradley "refused to afford plaintiff any accommodations for his profound hearing loss, by refusing to move him to the front of the unit, or any accommodation whatsoever, as he would ridicule and harass Plaintiff due to his hearing disability." *Id*.

Fourth, that Counselor Bradley conspired with RN Rider and Grievance Coordinator Cline to deprive him of "a reasonable accommodation." *Id*.

Fifth, that ADA Coordinator Bridgford "refused to afford me any type of accommodations even where I wrote and filed several complaints with her relating to my hearing disability." *Id*.

Sixth, that all four defendants retaliated against plaintiff "when he asserted his right for a reasonable accommodation by having custody officers and prisoners harass and degrade [him]." *Id*.

Plaintiff filed this action in the United States District Court for the Eastern District of Michigan, which transferred the action to this district because the alleged incidents occurred at LCF, a correctional facility located within the geographic boundary of the Western District of Michigan. *See* Opinion and Order (ECF No. 4).  This Court ordered service of the complaint.  This matter is now before the Court on defendants' motion for summary judgment for lack of proper exhaustion of administrative remedies.

## II.    Defendants' motion for summary judgment

### A.    Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

3

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

#### 1. Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741.  One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court.  This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules.  *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

        **2.**      **MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

        **3.**      **Discussion**

In his "verified" complaint, plaintiff alleged that "The events giving rise to this complaint occurred [sic] in January 2014 while I was confined at the Lakeland (Coldwater) facility in Coldwater Michigan." Compl. at PageID.7. Defendants point out that the MDOC's Step III Grievance Report indicates that plaintiff did not file any Step I grievances against any of the

defendants during the relevant time period. MDOC Step III Grievance Report (ECF No. 16-3, PageID.75-94). Defendants point out that some of their names appear in the responses to the grievance or plaintiff's appeals because they participated in the investigation of a grievance. Specifically, in February 2015, plaintiff complained that ARUS Marvin placed him in a unit not equipped to accommodate hearing impaired prisoners. *See* Grievance LCF-2015-02-0147-12I ("147") (ECF No. 16-3, PageID.97).

As an initial matter, there is an inconsistency between plaintiff's "verified" complaint and Grievance 147 as to when the alleged incidents occurred. Plaintiff's complaint stated that it was in January and February 2014, while Grievance 147 – which appears to be the only grievance related to plaintiff's claims – addressed incidents which allegedly occurred in January and February 2015. In his affidavit filed in response to the motion, plaintiff stated that his complaint contained an error, and that the events actually occurred while he was incarcerated at LCF from February 5, 2015 through March 26, 2015. *See* Burley Aff. (ECF No. 19-1, PageID.143). For purposes of this motion, the Court will assume that plaintiff's complaint contains a scrivener's error, and that the alleged incidents occurred in 2015.

Defendants point out that while plaintiff exhausted Grievance 147 through Step III, this grievance does not serve to exhaust administrative remedies in the present case because it was not directed against them. Defendant Grievance Coordinator Cline rejected Grievance 147 as a non-grievable issue regarding a department-wide policy, noting that plaintiff did not have a special accommodation. Grievance 147 at PageID.97. As part of this response, defendant RN Rider sent a note to Cline stating that LCF healthcare does not decide housing accommodations and that plaintiff "does wear a hearing aid but has no special housing accommodation." Rider Note at

PageID.98. In explaining this situation, RN Rider pointed out that plaintiff declined medical testing which would determine whether he actually had a hearing deficit:

> On 2/4/14 the grievant was seen by the provider at another facility. The grievant had been noted using the regular phone with the receiver to his ear at a normal phone receiver volume. This would indicate that he did not demonstrate need for special hearing devices. The grievant was offered to undergo an evoked auditory/brainstem response test on 1/2/12 which he declined. This test would have confirmed his reported hearing deficit. The grievant [sic] accommodations were discontinued during the visit on 2/4/14.

*Id*. The Court notes that RN Rider's response appears to have a scrivener's error because it is dated "2/14/14" (the date on which plaintiff's accommodation was discontinued), but refers to Grievance 147 which was not filed until 2015.

Assuming that all of the alleged events occurred in February and March 2015, plaintiff cannot rely on Grievance 147 as exhausting any claims against the four defendants because that grievance was directed at ARUS Marvin. Furthermore, plaintiff would have no constitutional claim against either defendant Cline for responding to the grievance or against defendant Rider for participating in the investigation of the grievance. A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See, e.g., Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). For this same reason, it appears to the Court that plaintiff cannot maintain a § 1983 action against defendant Rider, who assisted in the investigation of Grievance 147.

Next, defendant Bridgford had no connection with Grievance 147. Her name simply appears in the Step II response to the grievance as the person with whom plaintiff must file additional paperwork to pursue his ADA complaint. *Id.* at PageID.96. Finally, Counselor Bradley's name does not appear anywhere in the Grievance 147 file. Based on this record, plaintiff has not properly exhausted any claims against defendants related to Grievance 147. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.

Plaintiff filed an affidavit opposing the motion for summary judgment, stating that he attempted to file a grievance against defendant Rider on March 15, 2015, but that the grievance was never processed. *See* Burley Aff. at PageID.143-144. If plaintiff was improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required). Here, plaintiff has presented a copy of an unfiled grievance in which he claims that defendant Rider "released medical information from my medical files without my approval or authorization" and that "the information released was inaccurate." Unfiled Grievance (ECF No. 19-1, PageID.139). It appears to the Court that the grievance contains two alternative if not inconsistent claims. Defendants, however, have not filed a reply to plaintiff's response or affidavit.

Based on the record, there appears to be a genuine issue of material fact as to whether plaintiff was prevented from filing this grievance directed at defendant Rider. However, this is not the end of the Court's inquiry. Plaintiff's unfiled grievance involves an alleged HIPPA violation and a claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment, i.e., a refusal to accommodate plaintiff's alleged hearing problem by submitting

inaccurate medical information. Plaintiff's unfiled grievance did not claim that RN Rider's actions involved any of his other claims (a violation of the ADA, a violation of the RA, retaliation, conspiracy, denial of access to the court, denial interference with plaintiff's right of freedom of association, the failure to protect, defamation, or libel).[2]

This being said, plaintiff has no cause of action against defendant Rider for the alleged HIPPA violation. As one court explained in rejecting a prisoner's HIPPA claim against a prison health administrator:

> In general, HIPPA governs confidentiality of medical records and regulates how "covered entities" can use or disclose "individually identifiable health (medical) information (in whatever form) concerning an individual." 45 C.F.R. §§ 160 and 164. However, HIPPA regulations do not confer a private right of action on an individual. Plaintiff's only redress for an alleged HIPPA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, who has the discretion to investigate the complaint and impose sanctions, both civil and criminal. *See* 45 C.F.R. § 160.306. For these reasons, plaintiff fails to state a claim against defendant [prison health administrator] for the alleged infringement of his HIPPA privacy rights.

*Schaffer v. Schofield*, No. 2: 13-CV-323-RLJ, 2015 WL 4522929 at *8 (E.D. Tenn. July 24, 2015). *See L.S.D. v. Genesee County Community Mental Health*, No. 05-71844, 2006 WL 2347612 at *8 (E.D. Mich. Aug. 11, 2006) (in granting summary judgment to defendant on HIPPA claim, the court noted that "the federal courts that have addressed the issue have found that no private right of action exists under HIPAA") (listing cases). Accordingly, to the extent that this case moves

---

[2] With respect to these unexhausted claims, the Court notes that plaintiff cannot maintain a cause of action under the ADA or RA against an individual health care provider such as RN Rider. *See Lee v. Michigan Parole Board*, 104 Fed. Appx. 490, 492-93 (6th Cir. June 23, 2004) (the ADA does not impose liability on individuals); *Sedore v. Burt*, No. 1:16-cv-903, 2018 WL 1790086 at *3 (W.D. Mich. April 16, 2018) (adopting the magistrate judge's finding "that private health care providers cannot be held liable under the ADA and the RA"). Nor can plaintiff allege that he was denied access to the Court with respect to the unfiled grievance. *See, e.g., Jackson v. Powell*, 1:18-cv-466, 2018 WL 3722158 at *7 (W.D. Mich. Aug. 6, 2018) ("Even if Plaintiff was improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim.").

forward, it should be limited to the single claim that RN Rider was deliberately indifferent to plaintiff's serious medical needs by providing inaccurate medical records with respect to plaintiff's claim for a health-related accommodation.

### IV. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment be **DENIED** with respect to plaintiff's Eighth Amendment deliberate indifference claim against defendant Rider for submitted inaccurate medical information and **GRANTED** in all other respects.

I further recommend that defendants Cline, Bradley, and Bridgford be **DISMISSED** from this action.

I further recommend that this action proceed only as to plaintiff's Eighth Amendment deliberate indifference claim against defendant Rider.

Dated: August 27, 2018         /s/ Ray Kent
                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).